UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ROBIN A. ALLEN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) | No. 2:10-cv-35-DBH |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant | ) |  |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she was disabled as of her date last insured of September 30, 2007, capable as of that time of returning to past relevant work as a case worker or of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff last met the insured status requirements of the Social Security Act on September 30, 2007, Finding 1, Record at 12; that, through her date last insured, she had severe impairments of degenerative disc disease and degenerative joint disease of the spine, Finding 3, *id.*; that, through

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

her date last insured, she had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), Finding 5, *id*. at 15; that, through her date last insured, she was capable of performing past relevant work as a case worker, Finding 6, *id*. at 23; that, in the alternative, considering her age (51, defined as an individual closely approaching advanced age, as of her date last insured), education (at least high school), work experience (transferable job skills), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Finding 7, *id*.; and that she, therefore, was not disabled, as defined in the Social Security Act, at any time from August 31, 2006, her alleged onset date of disability, through September 30, 2007, her date last insured, Finding 7 [sic], *id*. at 24. The Decision Review Board found no reason to disturb the administrative law judge's decision, see *id*. at 1-4, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would

permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The administrative law judge also alternatively reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(g)); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) made a flawed analysis of her credibility, (ii) failed to accord adequate weight to the RFC opinion of treating physician Brian Knighton, D.O., and (iii) afforded undue weight to the RFC opinion of Disability Determination Services ("DDS") nonexamining consultant Donald Trumbull, M.D. *See* Plaintiff's Fact Sheet and Statement of Errors ("Statement of Errors") (Docket No. 9) at 3-22. I find no reversible error and, hence, recommend that the decision be affirmed.

### A. Credibility Determination

The plaintiff expends significant energy challenging point by point the myriad bases on which the administrative law judge discounted the credibility of her allegations of disabling symptoms. *See id*. at 4-18. She argues that the administrative law judge (i) found inconsistencies where none existed, (ii) erred in drawing negative inferences from her job-

3

seeking activity and her receipt of general assistance benefits predicated on seeking employment, (iii) contradictorily drew a negative inference based on her failure to pursue vocational rehabilitation, and (iv) failed to consider a DDS consultant's assessment of her allegations as credible. *See id.*

Administrative law judges' credibility findings are entitled to deference, especially when supported by specific findings. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

Even assuming *arguendo* that the administrative law judge erred in certain of the cited respects, her thorough and detailed credibility analysis remains supported by specific findings and, hence, entitled to deference. These findings include:

1. That the plaintiff told a medical practitioner that she lost her job due to a hurricane, which was inconsistent with her allegation to the Social Security Administration that she stopped working because of her impairments. *See* Record at 20-21, 144, 304. The plaintiff denies that the two statements are inconsistent, arguing that on each occasion she attributed her unemployment to both the hurricane and her impairments. *See* Statement of Errors at 5-6. Nonetheless, the emphasis in each is different. In response to the Social Security Administration's question, "Why did you stop working[,]" the plaintiff stated: "My back. Not wanting 2 spinal fusions, worked hard at 'conservative method.' Spend 70% of my time laying down, swimming exercises etc. My husband and I were wiped out of Key West by Hurican[e] Wilma." Record at 144. By contrast, a practitioner noted: "She has had a long battle with DDD [degenerative disc disease]. She was gainfully employed most of her adult life as a para-legal

4

and child advocate, but lost a job in Florida due to a hurricane a couple of years ago, and hasn't been able to find work since." *Id*. at 304. The thrust of the statement to the Social Security Administration is that she stopped working because of her back; the thrust of the statement to her practitioner is that she stopped working because of the hurricane.

2. That, when asked at hearing about the seeming contradiction between looking for work in order to satisfy a condition precedent of obtaining general assistance and representing to the Social Security Administration that she has been unable to work since August 31, 2006, the plaintiff testified, in essence, that she needed the money and so did what she had to do to get it. *See id*. at 21, 44-45. She now argues that there was no misrepresentation or inherent inconsistency in that (i) disabled persons understandably put off applying for disability, and seek income from other sources instead, because they cannot afford to be without income during the protracted adjudication process and (ii) looking for work, and even working part-time, are not inconsistent with a finding that one is disabled for Social Security purposes (that is, unable to work full-time on a sustained basis). *See* Statement of Errors at 5-8. Nonetheless, the administrative law judge focused on the nature of the plaintiff's explanation, supportably finding that it reflected negatively on her credibility in that it evinced a willingness to make the necessary statements to obtain desperately needed benefits: "The inconsistent statements made to two governmental entities in search of financial benefits do not bolster her credibility with respect to her allegations." Record at 21.[2]

---

[2] Furthermore, as counsel for the commissioner noted at oral argument, in the circumstances presented, the administrative law judge committed no legal error in taking this seeming contradiction into account. The First Circuit has indicated that an administrative law judge permissibly may consider a claimant's representation, for purposes of collecting unemployment benefits, that he or she is willing to work when "there was medical and vocational evidence supporting the denial of benefits and claimant's receipt of unemployment benefits does not appear to have been the decisive factor in the denial of benefits[.]" *Perez v. Secretary of Health, Educ. & Welfare*, 622 F.2d 1, 3 (1st Cir. 1980). Here, the *Perez* parameters are met. The administrative law judge did not rely solely on the plaintiff's application for and receipt of general assistance; rather, she supplied a number of reasons for her
(continued on next page)

3. The plaintiff's allegations of extreme functional limitations as of her date last insured, including "nil" ability to sit, a need to lie down most of the day, and an essentially immobile neck, are inconsistent with the objective medical evidence, the course of treatment, and her activities of daily living, which then included applying for jobs, taking 30- to 50-minute hikes, using a laptop, driving 45 minutes or more routinely to medical appointments, and even driving from Florida to Maine in February 2007. *See id*. at 16, 21-22. The plaintiff counters that (i) in judging the credibility of her allegation of "nil" ability to sit, the administrative law judge failed to take into account a need to alternate sitting and standing, observed by a Social Security Administration intake worker, and Dr. Knighton's statement that she could sit for only 10 minutes at a time, (ii) the fact that she sought medical treatment should have bolstered, rather than eroded, her credibility, (iii) she was forced to seek work as a result of desperate (destitute) circumstances, and did so at great cost to her physical well-being and, when possible, through use of a laptop or telephone, (iv) she testified that there was a block of time during the early afternoon during which she could accomplish things such as hiking, but that afterward she was consigned to bed for the remainder of the day, and (v) the administrative law judge overlooked the fact that she testified that she drove at her own pace from Florida to Maine, stopping when she could no longer tolerate driving, as a result of which the journey took 10 days. *See* Statement of Errors at 11-15.

Nonetheless, the administrative law judge supportably determined that an ability to drive 45 minutes for medical appointments or job searches represented a greater than "nil" ability to sit. She also permissibly determined that, despite the severity of the plaintiff's degenerative disc

---

credibility assessment. As discussed below, her RFC determination was supported by substantial evidence of record. No separate challenge, apart from reliance on a flawed RFC assessment, is made to her vocational findings.

and joint disease, findings on objective examination did not support the presence of an immobile neck, a "nil" ability to sit, or a need to lie down much of the day. *See, e.g.*, Record at 22. These included that (i) the plaintiff's neck was reported to be asymptomatic one time and to be supple at other times, *see id*. at 22, 271, 284, 302, (ii) the plaintiff was generally found to have a full range of motion in the upper extremities and cervical spine, *see id*. at 22, 271, 274, 285, 302, and (iii) her pain was noted to be controlled by Tramadol, *see id*. at 22, 290. The plaintiff concedes that no treating or examining practitioner expressly stated that she needed to lie down during the day. *See* Statement of Errors at 10-11.

To the extent that the plaintiff argues that the administrative law judge committed reversible error in failing to consider Dr. Trumbull's finding that her allegations were credible, *see id*. at 17-18; Record at 394, any error is harmless. The administrative law judge's RFC findings comport with those of Dr. Trumbull. *Compare* Finding 5, *id*. at 15 *with id*. at 390-93; *see also id*. at 22.[3]

For all of these reasons, there is no basis on which to disturb the administrative law judge's credibility finding.

Beyond this, as counsel for the commissioner pointed out at oral argument, even had the administrative law judge's credibility finding been unsupported by substantial evidence, her adoption of the RFC opinion of a DDS expert who deemed the plaintiff's subjective allegations credible, Dr. Trumbull, would have rendered that error harmless. *See Meacham v. Astrue*, Civil

---

[3] The administrative law judge's RFC finding omits certain components of the Trumbull opinion, specifically, that the plaintiff could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds and only occasionally balance, stoop, kneel, crouch, or crawl. *Compare* Finding 5, Record at 15 *with id*. at 391. However, these components, or materially similar components, were conveyed to the vocational expert, *see id*. at 53, 57-58, rendering any error harmless.

7

No. 09-590-P-S, 2010 WL 4412113, at *6-*7 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010).

The plaintiff fails to demonstrate that reversal and remand are warranted on the basis of the asserted errors in determining credibility.

## B. Treatment of Treating Physician

The plaintiff next faults the administrative law judge for according inadequate weight to the May 13, 2009, RFC opinion of Dr. Knighton. *See* Statement of Errors at 18-20. As she acknowledges, *see id.* at 18-19, even opinions of treating sources are not entitled to controlling weight when they address RFC, a determination reserved to the commissioner, *see* 20 C.F.R. § 404.1527(e)(2)-(3) (as to RFC, even the opinions of treating sources are accorded no "special significance").

An administrative law judge nonetheless must supply "good reasons" for discounting the RFC opinion of a treating source. *See id.* § 404.1527(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

Dr. Knighton deemed the plaintiff capable of sitting for less than two hours in an eight-hour workday, standing/walking for less than two hours in an eight-hour workday, rarely lifting

8

10 pounds or less, and never lifting more than 10 pounds. *See* Record at 491. He indicated that she would need to walk several times an hour for several minutes and shift positions at will from sitting, standing, or walking, would need to take three to five unscheduled breaks of 30 to 90 minutes' duration during an eight-hour workday, was incapable of even a "low stress" job, and would miss more than four days per month of work as a result of impairments or treatment. *See id*. at 490-92. At the top of his RFC form, Dr. Knighton wrote: "Findings listed below were present <u>before</u> 9/30/07 as outlined on a MRI dated 6/16/06." *Id*. at 489 (emphasis in original).

The administrative law judge supplied several reasons for rejecting the Knighton RFC opinion, including its inconsistency with Dr. Knighton's own treatment notes, notes of other treating and examining sources, and the plaintiff's actual activities. *See* Record at 22. She also stated that the Knighton RFC appeared to be based on the plaintiff's subjective allegations and that his assessment appeared to be of her current level of functioning, not her functioning as of her date last insured. *See id*. The plaintiff argues that none of these reasons bears scrutiny. *See* Statement of Errors at 19. Nonetheless, my review discloses that at least two of the stated reasons, the asserted inconsistencies with Dr. Knighton's own progress notes and those of other treating and examining practitioners, are supported by substantial evidence. I need not consider whether the other stated reasons bear scrutiny. The highlighted inconsistencies, in themselves, constitute "good reasons" to reject the Knighton opinion.

As the plaintiff points out, *see id*., the administrative law judge did not detail the ways in which she found the Knighton RFC opinion inconsistent with other evidence of record, including Dr. Knighton's own notes, *see* Record at 22. However, she elsewhere summarized the medical evidence of record. *See id*. at 17-20. With respect to Dr. Knighton, she noted, and the record corroborates, that (i) on August 31, 2007, his treatment notes revealed complaints of pain but no

9

observation of objective signs, *see id*. at 18, 374, (ii) on September 7, 2007, examination revealed no masses, effusions, misalignment, crepitus, or tenderness in major joints, *see id*. at 18, 372, (iii) on September 21, 2007, he noted improvement in both psychological and physical complaints, *see id*. at 18, 370, (iv) on October 4, 2007, no change was noted, *see id*. at 18, 366, (v) on October 26, 2007, he noted anxiety, which was improved on November 13, 2007, *see id*. at 18, 361, 363, and (vi) on February 25, 2008, the plaintiff was actively looking for work, *see id*. at 18, 359.

In addition, after the plaintiff presented with low back pain on February 25, 2008, Dr. Knighton imposed activity restrictions to "avoid bending movements, avoid prolonged sitting, avoid pulling motions, avoid prolonged rest, [and] avoid repetitive lifting[.]" *Id*. at 360.[4] These restrictions, found only five months after the expiration of the plaintiff's date last insured, are considerably lighter than those set forth as of May 13, 2009, which Dr. Knighton deemed retroactive to September 30, 2007, on the strength of an MRI result alone. *Compare id*. *with id*. at 489-92.

The administrative law judge also supportably found the Knighton RFC opinion inconsistent with other medical evidence of record as elsewhere summarized, including:

1. An examination by a Portland Community Free Clinic practitioner on August 6, 2007, following complaints of neck pain without radiation and lower back pain with occasional radiation to her legs. *See id*. at 18, 253. Examination revealed tenderness but no other significant signs of abnormality. *See id*. The plaintiff was able to heel and toe walk and had a normal gait and reported that Ultram helped relieve pain. *See id*.

---

[4] On examination on February 25, 2008, Dr. Knighton elicited pain over the plaintiff's lumbar left and right lumbar paraspinal muscles, found muscle hypertonicity in the left and right lumbar paraspinal muscles, and painful range of motion during extension and flexion. *See* Record at 360.

10

2. An examination by Nena Ragay-Lundkvist, D.O., on December 11, 2007, following complaints of constant upper and lower back pain, intermittent numbness into her hands, muscle spasms, and intermittent bilateral leg, buttock, and hip pain. *See id*. at 18, 302. Examination revealed no acute distress, no antalgic gait, no focal tenderness of the neck, no difficulty getting up from a chair, and no focal tenderness to palpation on her upper and lower back. *See id*. She was found to have a supple neck, a full range of motion, ability to heel and toe stand, intact sensation and muscle strength in both upper and lower extremities, and symmetric deep tendon reflexes. *See id*. Physical examination on January 8, 2008, was unchanged. *See id*. at 18, 300.

3. An examination by Philip S. Anson, M.D., on February 4, 2008, following complaints of neck and low back pain. *See id*. at 19, 270. Examination revealed good cervical range of motion, no focal tenderness, and unremarkable upper extremity function, with intact hip, knee, and ankle motion, symmetrical reflexes, and no motor or sensory deficit in the lower extremities. *See id*. at 19, 271. The plaintiff had moderate loss of lumbar lordosis and reduced range of motion in the lower back but full rotation and full lateral bending. *See id*. Dr. Anson recommended conservative treatment, avoiding surgery if possible, a physical therapy program for core strengthening, smoking cessation, keeping the plaintiff's weight low, and ongoing activity modification, as she was then doing. *See id*.

4. An examination by Karyn L. Woelflein, M.D., on February 29, 2008, following complaints of severe pain and limitations. *See id*. at 19, 273. Although the plaintiff moved about very slowly and stiffly and with some pain behaviors, on examination of the spine, there was no abnormal curvature or asymmetry, and she had fairly good range of motion of the neck

and lumbosacral spine. *See id*. at 19, 274. Dr. Woelflein noted that the plaintiff was "very active[,]" exercising, and walking her dog. *See id*. at 19, 273.

In short, the administrative law judge considered the Knighton RFC opinion and supplied good reasons for its rejection. No more was required.

### C. Weight Given to Trumbull RFC Opinion

The plaintiff finally complains that, to the extent the administrative law judge relied on the Trumbull RFC opinion, she erred in so doing because Dr. Trumbull did not have the benefit of review of material evidence post-dating his opinion, namely, the Knighton RFC opinion. *See* Statement of Errors at 20-22.

I perceive no error. As the plaintiff notes, *see id*. at 21, as a general rule, a DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted subsequent to its issuance, calling the expert's conclusions into question, *see, e.g., Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (agency RFC forms could not "constitute substantial evidence that [the claimant] was capable of performing the full range of light work at the time of the hearing (in December 1991) . . . because the opinions in these agency RFC assessment forms (completed in January 1991) were not based upon the full record in this case"); *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted); *Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308, at *3 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 28, 2006).

12

Nonetheless, I am unpersuaded that the issuance of the Knighton RFC opinion called into question Dr. Trumbull's conclusions. From all that appears, Dr. Trumbull had the benefit of review of the entire available underlying medical record, including Dr. Knighton's progress notes and those of Drs. Wolflein and Anson. *See* Record at 395-96. There is no reason to believe that his review of the Knighton RFC opinion, which the administrative law judge supportably found entitled to little weight, would have altered his conclusions.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of December, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge